**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2755-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TYSEN R. PRIVOTT,

    Defendant-Appellant.

_____

Submitted May 19, 2026 – Decided July 20, 2026

Before Judges Gooden Brown and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 21-09-0882, 21-09-0884, and 21-10-0961.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Frank J. Pugliese, Designated Counsel, on the brief).

Linda Estremera, Middlesex County Prosecutor, attorney for respondent (Hudson E. Knight, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Tysen R. Privott appeals from the April 14, 2025 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

On January 30, 2021, at around 3:15 a.m., defendant was pulled over on U.S. Highway 1 South in Woodbridge because he was "drift[ing] . . . in and out of the lanes," at one point causing another car to "abruptly change lanes without signaling to avoid being hit by" defendant's 2019 Chevrolet Impala. During the motor vehicle stop, defendant was ordered to exit the car after officers detected "an overwhelming odor of raw marijuana." Defendant's car interior was searched and defendant was frisked. Defendant surrendered a switchblade prior to being pat down and produced a State identification card instead of a driver's license.

The search of defendant's car revealed contraband. Hidden behind the "infotainment screen," officers discovered a black handgun, a six-round magazine, a clear plastic bag containing a "green leafy substance," a plastic bag containing a "white-colored powdery substance," a plastic bag containing a "white-colored rock-like substance," "nine hollow nose bullets," two cell phones, and "$633 in U.S. currency[] in small denominations." In the vehicle's

2

trunk, officers discovered drug paraphernalia, including a portable electronic scale, a small box of plastic sandwich bags, barcode stickers, and an open box of dryer sheets. Defendant was arrested and transported to police headquarters where he was charged with drug and weapons related offenses.

Prior to the traffic stop, based on a July 2020 tip from a confidential informant (CI), the Middlesex County Prosecutor's Office (MCPO) had initiated an undercover investigation into a drug trafficking ring involving Terrence Barker and several other individuals. On February 13, 2021, the MCPO surveilled Leland Gardens Apartments in Plainfield in connection with the investigation. Investigators observed Barker drive into the complex, after which a black male dressed in a grey sweatshirt and grey sweatpants walked out of the apartment complex, towards Barker's parked car, and then returned to the apartment complex. Later, investigators observed the same man engage in three "hand-to-hand" transactions with different individuals arriving at the complex.

Pretending to be a food courier, an undercover detective rang the doorbell of the apartment that the man was seen entering. The man exited, allowing the detective to see his face. Based on the encounter, utilizing defendant's driver's license, the detective later identified the man as defendant. About two months

later, defendant was charged in connection with the alleged drug trafficking operation by complaint-warrant.

Subsequently, defendant was charged in three separate indictments related to the January and February 2021 police encounters. Indictment No. 21-09-0882 charged defendant with second-degree unlawful possession of a weapon, namely, a handgun, N.J.S.A. 2C:39-5(b)(1) and :58-4 (count one); fourth-degree unlawful possession of a weapon, namely, a switchblade, N.J.S.A. 2C:39-5(d) (count two); fourth-degree unlawful possession of hollow nose bullets, N.J.S.A. 2C:39-3(f) (count three); fourth-degree unlawful possession of a switchblade, N.J.S.A. 2C:39-3(e) (count four); third-degree possession of a controlled dangerous substance (CDS), namely, cocaine, N.J.S.A. 2C:35-10(a)(1) (count five); third-degree possession of CDS, namely, less than one-half ounce of cocaine, with intent to distribute, N.J.S.A. 2C:35-5(a)(1), (b)(3) (count six); second-degree possession of a firearm while possessing CDS with intent to distribute, N.J.S.A. 2C:35-5 and :39-4.1(a) (count seven); second-degree possession of a weapon while possessing CDS with intent to distribute, N.J.S.A. 2C:35-5 and :39-4.1(c) (count eight); fourth-degree possession with intent to distribute drug paraphernalia, N.J.S.A. 2C:36-3 (count nine); and third-degree financial facilitation, N.J.S.A. 2C:21-25(a) (count ten).

4

Indictment No. 21-09-0884 charged defendant with second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1) (count one); and fourth-degree certain persons not to have a weapon, N.J.S.A. 2C:39-7(a) (count two). Indictment No. 21-10-0961, a seventy-three count indictment charging twenty-two individuals, charged defendant with third-degree conspiracy to distribute heroin and fentanyl, N.J.S.A. 2C:35-5(a)(1) and (b)(3) or (b)(5), and N.J.S.A. 2C:5-2 (count fifty-nine); and third-degree possession of CDS, namely, cocaine, with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3) (count sixty-six). The evidential basis for the first two indictments arose from the January 30, 2021 motor vehicle stop, and the evidential basis for the third indictment arose from the investigation into the drug trafficking ring.

Defendant entered a negotiated guilty plea to count one of Indictment No. 21-09-0882 (unlawful possession of a handgun); count one of Indictment No. 21-09-0884 (certain persons not to have weapons); and count sixty-six of Indictment No. 21-10-0961 (possession of CDS with intent to distribute). In exchange for defendant's guilty plea, the State agreed to recommend a seven-year prison term, with forty-two months of parole ineligibility, for unlawful possession of a handgun; a concurrent five-year prison term, with five years of parole ineligibility, for certain persons not to have weapons; and a concurrent

A-2755-24

five-year prison term for possession of CDS with intent to distribute, for an aggregate term of seven years in prison, with five years of parole ineligibility. The State also consented to defendant's release from jail pending sentencing to address a medical issue involving his eyes. Defendant required a cornea transplant.

Defendant was subsequently sentenced in accordance with the plea agreement. On January 10, 2024, we affirmed the sentence on a sentencing oral argument calendar, see R. 2:9-11, but remanded to correct jail credits. Defendant later filed a timely self-represented PCR petition, alleging ineffective assistance of counsel (IAC). Counsel was assigned and filed a supplemental brief arguing, among other things, plea counsel was ineffective by: (1) failing to file a motion to suppress the warrantless motor vehicle search; (2) erroneously advising defendant that he had to plead guilty to all three cases to be released from custody to obtain medical treatment; (3) failing to obtain an adequate factual basis from defendant for the offenses; and (4) failing to obtain additional discovery concerning the involvement of the CI in the drug trafficking case.

In a supporting certification, defendant averred:

> 13. My attorney conferred with me prior to entering my guilty plea on Indictment Number 21-10-0961, as my attorney advised me that I could only get out of custody to have surgery if I pled guilty to all three cases.

14. I relied on my attorney's assurances and advice that I could only get out of custody to have . . . surgery if I pled guilty to all three cases and I pled guilty based on that reliance.

15. If my attorney had not told me that I would only be released for surgery[,] I would not have pled guilty to the third indictment because I was innocent of those charges.

16. The outcome would have been different because I would not have pled guilty.

17. The police arrested me based on information they received from a [CI].

18. Based on the information provided by the [CI,] the police set up surveillance.

19. The officer saw me during that surveillance and allegedly identified me from a photo.

20. I became the target of a major drug investigation based on information given to police from an informant.

21. Police reports fail to reveal anything about the informant or anything about what the informant said to cause the police to make me the target of a major drug investigation.

22. I had absolutely no information about how I became the target of a major drug investigation[,] because the police set up surveillance based on information received from an informant.

A-2755-24

23. I was denied a fair opportunity to develop an adequate defense when all of this information was concealed.

24. My attorney was ineffective for failing to develop this evidence to ensure my right to a fair trial.

25. The State turned over police reports to my attorney alluding to the fact that an informant provided information to police about the drug investigation that I was the target of.

26. My attorney should have requested information about the informant or informants who directly led to the charges against me.

Following oral argument, the PCR judge entered an order on April 14, 2025, denying defendant's petition. In an accompanying statement of reasons, the judge recounted the facts and procedural history of the case, applied the governing legal principles, and concluded defendant failed to establish a prima facie case of IAC to justify a hearing or other relief. The judge found counsel was not ineffective, but instead made appropriate strategic choices, provided adequate advice regarding sentencing exposure, and solicited an adequate factual basis. This appeal followed.

On appeal, defendant raises the following points for our consideration:

8

POINT I[1]

DEFENDANT ESTABLISHED PRIMA FACIE CLAIMS OF [IAC], ENTITLING HIM TO [PCR]. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART. I, [¶] 10; R. 3[:]22-10[(B)].

. . . .

[A]. Defendant Received [IAC], When Prior to Trial, Counsel Failed to Move for a Suppression Hearing on Indictment Number 21-09-0882.

[B]. The Search of the Interior of Defendant's Vehicle Exceeded the Permissible Scope of a Warrantless Search Based on the Automobile Exception to the Warrant Requirement. The Matter Must be Remanded on this issue.

[C]. Trial Counsel was Ineffective for Giving Defendant Erroneous Advice Constituting Coercion Prior to the Entry of His Guilty Pleas.

[D]. Defense Counsel was Ineffective by Allowing the Plea to Go Through in the Absence of an Adequate Factual Basis.

[E]. Trial Counsel was Ineffective for Failing to Request Additional Discovery Concerning the Involvement of the Informant in Defendant's Case.

. . . .

---

[1] We abbreviate the point headings for conciseness.

POINT II

ALTERNATIVELY, DEFENDANT'S CLAIMS ARE SUPPORTED BY MATERIAL ISSUES OF DISPUTED FACTS LYING OUTSIDE THE RECORD. RESOLUTION OF THE DISPUTED FACTS NECESSITATED AN EVIDENTIARY HEARING. THE PCR COURT ERRED IN FAILING TO CONDUCT SUCH A HEARING.

II.

We begin by setting out the guideposts that inform our review. "We review the legal conclusions of a PCR judge de novo," State v. Reevey, 417 N.J. Super. 134, 146 (App. Div. 2010), but "review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing," State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "[W]here . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)).

An evidentiary hearing is only required when (1) a defendant establishes "a prima facie case in support of [PCR]," (2) the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) the court determines that "an evidentiary hearing is

10

necessary to resolve the claims" asserted. State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)); see also R. 3:22-10(e)(2) (providing "[a] court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory[,] or speculative").

Indeed, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." Brewster, 429 N.J. Super. at 401 (omission in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)); see also State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (explaining the mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing and the defendant "must do more than make bald assertions").

"To establish a prima facie case, [a] defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b). Moreover, a defendant must make this showing "by a preponderance of the credible evidence." State v. Goodwin, 173 N.J. 583, 593 (2002).

Rule 3:22-2 recognizes five cognizable grounds for PCR, including a "[s]ubstantial denial in the conviction proceedings of [a] defendant's

[constitutional] rights," R. 3:22-2(a), which encompasses the Sixth Amendment right to the effective assistance of counsel at issue in this appeal, State v. Nash, 212 N.J. 518, 541-42 (2013). To establish a prima facie claim of the denial of the effective assistance of counsel as contemplated under Rule 3:22-2(a), a defendant must demonstrate that the performance of counsel fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984), and adopted in State v. Fritz, 105 N.J. 42, 49-58 (1987), and that the outcome would have been different without the purported deficient performance. Nash, 212 N.J. at 541-42. Stated differently, a defendant must show: "(1) 'counsel's performance was deficient'; and (2) 'the deficient performance prejudiced the defense.'" State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (quoting Strickland, 466 U.S. at 687).

To satisfy the first prong, a defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. "[I]n making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. As such, a defendant "must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

In that regard, "[i]f counsel thoroughly investigates law and facts, considering all possible options, his or her trial strategy is 'virtually unchalleng[e]able.'" State v. Savage, 120 N.J. 594, 617 (1990) (quoting Strickland, 466 U.S. at 690-91). On the other hand, IAC may be established "when counsel fails to conduct an adequate pre-trial investigation." State v. Porter, 216 N.J. 343, 352 (2013). However, "[i]t is not [IAC] for defense counsel not to file a meritless motion," State v. O'Neal, 190 N.J. 601, 619 (2007), or fail "to raise unsuccessful legal arguments," State v. Worlock, 117 N.J. 596, 625 (1990).

Still, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. For that reason, "[t]he quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt." State v. Castagna, 187 N.J.

293, 314 (2006). "The test is not whether defense counsel could have done better, but whether he [or she] met the constitutional threshold for effectiveness." Nash, 212 N.J. at 543.

To satisfy the second Strickland/Fritz prong, "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694). This prong generally requires that a defendant establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "That 'is an exacting standard.'" State v. Gideon, 244 N.J. 538, 551 (2021) (quoting State v. Allegro, 193 N.J. 352, 367 (2008)).

To establish the prejudice prong in the context of a guilty plea, a defendant must show "'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). To that end, "a [defendant] must convince the court that a decision to reject the plea bargain" and "insist on going to trial" would have been "rational under the circumstances." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla v.

Kentucky, 559 U.S. 356, 372 (2010)).  That determination should be "based on evidence, not speculation," ibid., and "[s]olemn declarations in open court carry a strong presumption of verity."  State v. Simon, 161 N.J. 416, 444 (1999) (alteration in original) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Failure to meet either prong of the two-pronged Strickland/Fritz test results in the denial of a petition for PCR.  State v. Parker, 212 N.J. 269, 280 (2012) (citing State v. Echols, 199 N.J. 344, 358 (2009)).  That said, "courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient."  State v. Gaitan, 209 N.J. 339, 350 (2012) (citation omitted) (citing Strickland, 466 U.S. at 697).

III.

We first address defendant's contention that counsel was ineffective for failing to file a suppression motion.  Defendant contends the "small non-prosecutable quantity of a green leafy substance," "secreted behind the vehicle's infotainment screen," was insufficient to create the "overwhelming odor of raw marijuana" the officer relied on for probable cause to search defendant's vehicle. Defendant argues that a suppression hearing would have required the responding officer to "provid[e] a credible explanation of how such a small quantity of

15

marijuana" could create the "overwhelming odor." Defendant also argues that the search exceeded its permissible scope, as the search unjustifiably "went beyond the passenger compartment" into the space behind the infotainment screen.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Because warrantless searches are presumptively unreasonable, "when the police act without a warrant, the State bears the burden of proving by a preponderance of the evidence not only that the search or seizure was premised on probable cause, but also that it 'f[ell] within one of the few well-delineated exceptions to the warrant requirement.'" State v. Johnson, 193 N.J. 528, 552 (2008) (alteration in original) (quoting State v. Pineiro, 181 N.J. 13, 19-20 (2004)).

Under the automobile exception, a police officer may conduct a warrantless search of a motor vehicle during a lawful roadside stop "in situations where: (1) the police have probable cause to believe the vehicle contains evidence of a criminal offense; and (2) the circumstances giving rise to probable cause are unforeseeable and spontaneous." State v. Rodriguez, 459 N.J. Super.

13, 22 (App. Div. 2019) (citing State v. Witt, 223 N.J. 409, 447-48 (2015)). When the January 30, 2021 motor vehicle stop at issue in this case occurred,[2] "New Jersey courts . . . recognized that the smell of marijuana itself constitutes probable cause that a criminal offense ha[s] been committed and that additional contraband might be present." State v. Walker, 213 N.J. 281, 290 (2013) (alteration in original) (quoting State v. Nishina, 175 N.J. 502, 515-16 (2003)) (internal quotation marks omitted).

However, even if an officer has "probable cause to believe that the vehicle is carrying contraband[,] . . . the search must be reasonable in scope." State v. Patino, 83 N.J. 1, 10 (1980). Although a search may first be "validly initiated, [it] may become unreasonable because of its intolerable intensity and scope." Id. at 10-11 (citing Terry v. Ohio, 392 U.S. 1, 18-19 (1968)). "The scope of a warrantless search of an automobile is defined by the object of the search and

---

[2] The February 22, 2021 passage of the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56, "added a new section in the Criminal Code" stating that neither "the odor of cannabis or burnt cannabis," nor the "possession of marijuana or hashish without evidence of quantity in excess of any amount that would exceed the amount . . . which may be lawfully possessed," "shall, individually or collectively, constitute reasonable articulable suspicion of a crime" except on school property or at a correctional facility. State v. Cohen, 254 N.J. 308, 328 (2023) (omission in original); N.J.S.A. 2C:35-10(a)(3)(b)(i).

A-2755-24

the places where there is probable cause to believe that it may be found." State v. Esteves, 93 N.J. 498, 508 (1983) (citations omitted).

Before CREAMMA, the permissible scope of a search was restricted to areas "'strictly tied to and justified by' the circumstances which rendered its initiation permissible." Patino, 83 N.J. at 11 (quoting Terry, 392 U.S. at 19). The Supreme Court applied this principle assessing the proper scope of an automobile search in State v. Cohen, 254 N.J. 308 (2023).

In that pre-CREAMMA case, the police stopped the defendant's car for a motor vehicle violation. Cohen, 254 N.J. at 314. As they approached the car, they detected the "general smell" of then-illegal raw marijuana, although they could not pinpoint the area constituting the source of the odor. Id. at 325. The police also observed what appeared to be marijuana in the driver's beard. Id. at 314. A search of the car's passenger compartment uncovered no drugs or contraband. Id. at 315. At that point, the police searched the car's engine compartment and trunk and discovered two guns under the hood and hollow point bullets in the trunk. Ibid.

The Court invalidated the search that went beyond the passenger compartment of the car because the general smell of marijuana was inadequate, in and of itself, to justify a warrantless intrusion outside the interior of the car.

18                                                                          A-2755-24

Id. at 327. The Court held that, as a general rule, searches that extend beyond the passenger compartment of a car must be justified by "facts indicating something more than simply detecting the smell of marijuana from the interior of the car." Id. at 324. Providing guidance for the resolution of other pre-CREAMMA cases, the Court explained:

> This holding in no way suggests that areas within the interior of the car would require separate probable cause findings in order to conduct a warrantless search. We are not dividing up the interior of vehicles such that an officer would need to establish different or additional probable cause to search the front seat as opposed to the back seat, for example. Pursuant to the automobile exception, if an officer has probable cause to search the interior of the vehicle, that probable cause encompasses the entirety of the interior.
>
> [Id. at 327.]

However, if the police wish to extend the search beyond the interior of the vehicle, they must be able to point to "unique facts" beyond the mere smell of marijuana. Id. at 324. The Court reasoned:

> We are also not suggesting that the warrantless search of a trunk or engine compartment will always require separate probable cause findings. Instead, we reiterate that a warrantless search of a car "must be reasonable in scope" and "strictly tied to and justified by the circumstances which rendered its initiation permissible." Patino, 83 N.J. at 10-11. However, a generalized smell of raw marijuana does not justify a search of every compartment of an automobile.

19

[Cohen, 254 N.J. at 327-28.]

Applying Cohen's rationale, in State v. Wilson, 478 N.J. Super. 564, 570-71 (App. Div.), leave to appeal denied, 258 N.J. 420, 258 N.J. 432, and 258 N.J. 434 (2024), we considered whether police were permitted to search a locked glove box within a car based on the smell of marijuana emanating from the passenger compartment of the car. We held "police [are] permitted to search a glove box based solely on the odor of marijuana emanating generally from the passenger compartment of a vehicle without first determining whether the odor is coming specifically from the vicinity of the glove box," as the glove box fell

> within the spatial boundaries of a lawful automobile-exception search because there was probable cause to believe contraband would be found in the passenger compartment, the glove box was located within that compartment, and the glove box was a container that could hold the object of the search for which there was probable cause.
>
> [Id. at 570, 584.]

We noted in Wilson that "a search that is reasonable at its inception may become unlawful 'by virtue of its intolerable intensity and scope,'" which implicitly imposed limitations "not just on the spatial boundaries of an automobile-exception search," but "also on the techniques and tools police may employ to execute the search." Id. at 590 (emphasis omitted) (quoting Cohen,

20

254 N.J. at 320).  As such, when considering the permissible scope of a search, there are implied "limits on the degree of mechanical force that may be used and the amount of damage to personal property that will be tolerated."  Ibid.

In Wilson, because unlocking the glove box required only the use of the ignition key and did not involve "breaking [it] open," we held the officer's search of the glove box was reasonable.  Id. at 591-92.  We explained:

> Using a key to open a lock does not interfere with the structural integrity of a vehicle.  Nor does it produce any damage, much less damage that is excessive or unnecessary.
>
> . . . [W]ith respect to the analytically distinct limitation on the intensity of an automobile-exception search, we deem the use of a key to open a locked container or compartment to be qualitatively different from using a pry bar or similar instrumentality, or brute force, to break open the container or compartment. . . .
>
> That said, we have no occasion in this case to consider what level of intensity or damage would exceed the permissible boundaries of the automobile exception.  Here, there was no insult to the structural integrity of the vehicle and no damage caused to the glove box.
>
> [Ibid.]

Still, in Wilson, we stressed "New Jersey['s] automobile[-]exception . . . is designed to permit unplanned, expeditious roadside searches," id. at 591, not "protracted roadside searches that entail, for example, figuring out how to safely

21

access trap doors and hidden compartments, or otherwise interfering with the structure of a vehicle." Id. at 591 n.9. Indeed, we noted "[t]his warrant exception, as circumscribed under Article I, Paragraph 7, does not contemplate disassembling a vehicle or using the jaws of life to find the objects of the search." Id. at 591; see also State v. Murray, 151 N.J. Super. 300, 303-04, 308 (App. Div. 1977) (holding the search based on the automobile exception was "fatally excessive in its scope" where officers removed the driver's seat from a van after discovering "an empty roach clip and a vial containing traces of mari[j]uana" in plain view during a traffic stop); State v. Nunez, 262 N.J. Super. 251, 253, 256 (App. Div. 1993) (upholding the constitutionality of a search under the automobile exception based on the discovery of two small marijuana cigarettes in the car's ashtray because the officer's training and experience supported a belief that the vehicle contained secret compartments justifying physical manipulation of the structural interior of the car).

Here, probable cause for the warrantless search of the vehicle was based on the "overwhelming odor of raw marijuana." The evidence seized was hidden behind the "infotainment screen" in the passenger compartment of the vehicle. Defendant analogizes the infotainment screen storage to the trunk or engine compartment at issue in Cohen. However, the analogy is inapposite. See, e.g.,

id. at 324 (distinguishing the "trunk" as part of "other areas beyond the passenger compartment" (emphasis added)). Indeed, the infotainment screen storage is more akin to the glove compartment at issue in Wilson, 478 N.J. Super. at 570, and is readily distinguishable from a trunk. Nothing in the record indicates that the compartment was a "hidden compartment," see Nunez, 262 N.J. Super. at 254, requiring "interfer[ence] with the structural integrity" of the vehicle for access, see Murray, 151 N.J. Super. at 307, or that the compartment was anything beyond a feature of the car.[3] Therefore, here, as in Wilson, the search was legally permissible, and a motion to suppress the evidence seized from defendant's vehicle would have failed.

Defendant's contention that his suppression motion would have succeeded if the officer's credibility had been tested is equally unavailing. Although defendant claims there was insufficient marijuana to produce a noticeable odor, defendant concedes marijuana was found within the vehicle. "[W]hen counsel

---

[3]  Indeed, at least one model of defendant's car, a 2019 Chevrolet Impala, contains a built-in hidden storage space behind the infotainment center. 2019 Chevrolet Impala LS 4dr Sdn Features and Specs, CAR AND DRIVER, https://www.caranddriver.com/chevrolet/impala/specs/2019/chevrolet_impala_ chevrolet-impala_2019 ("Storage, innovative, hidden behind 8" diagonal touch screen with valet-mode lockable.") (last visited June 18, 2026). Although the compartment may have been lockable, ibid., there is no indication in the record that the compartment was first unlocked by the officers.

fails to file a suppression motion, the defendant not only must satisfy both parts of the <u>Strickland</u> test but also must prove that his [or her] Fourth Amendment claim is meritorious." <u>Goodwin</u>, 173 N.J. at 597 (quoting <u>State v. Fisher</u>, 156 N.J. 494, 501 (1998)). Here, defendant can prove neither.

Even if defendant's Fourth Amendment claim had merit, it was not IAC for defense counsel to fail to file a suppression motion because defendant was subject to an escalating plea policy. Defendant received escalating plea offers from the MCPO, beginning with a pre-indictment offer and ending with a final case disposition conference offer. He was notified by letter that, "[I]f motions [were] filed at any time, any previous offer [would be] withdrawn."

As the PCR judge astutely pointed out,

> [T]he record here suggests that counsel was mindful of the escalating plea offer and the impact that motion practice would have on [defendant's] sentencing exposure. The record also suggests that the likelihood of success on such an application was doubtful. . . .
>
> Additionally, during his plea colloquy on April 29, 2022, [defendant] stated that he was, in fact, satisfied with counsel's representation, and that he was foregoing any additional motions that may be filed.
>
> . . . [T]here was an understandable strategic choice in not filing the motion to suppress, both in terms of the escalating plea offer facing [defendant] and the lack of any meritorious [F]ourth [A]mendment violation claim. Moreover, [defendant] does not claim that there is a

reasonable probability that but for counsel errors he would have "insisted on going to trial." Rather, he seeks permission to accept another plea [or] proceed to trial.

Because of the escalating plea policy, a failure to file a non-meritorious suppression motion was "a sound strategic approach to the case," State v. Pierre, 223 N.J. 560, 579 (2015), and indicated competency of counsel, State v. Nunez-Valdez, 200 N.J. 129, 139 (2009).

Next, defendant contends his attorney coerced him by advising him he had to plead guilty to all three indictments in order "to be released from custody and receive the medical treatment he desperately needed."

Rule 3:9-2 instructs courts not to accept a plea of guilty

> without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.

"Generally, representations made by a defendant at plea hearings concerning the voluntariness of the decision to plead, as well as any findings made by the trial court when accepting the plea, constitute a 'formidable barrier' which defendant must overcome." Simon, 161 N.J. at 444 (quoting Blackledge, 431 U.S. at 74).

25

During the plea hearing, the following colloquy occurred:

> [THE COURT:] [I]n paragraph [twenty-one of the plea form] it . . . tells the [c]ourt, that the [S]tate has consented to [your] release until sentencing to address medical concerns with your eyes, and specifically with reference to a corneal transplant.
>
> [DEFENDANT:] Yes.
>
> [THE COURT:] So that's included as part of ultimately what you negotiated with the [S]tate, is that right?
>
> [DEFENDANT:] Yes.
>
> [THE COURT:] Okay. . . . I want to make sure that today, although this may have been a consideration for you in order to plead guilty . . . , that it is not the sole reason that you are pleading guilty, but in fact you're pleading guilty because you're guilty. Is that fair to say?
>
> [DEFENDANT:] Yes.
>
> [THE COURT:] Okay. Now in order to plead guilty, you are going to have to give up some rights. You're going to give up your right to have a jury trial. You're going to give up your right to confront witnesses at a jury trial, and you're also giving up your right to remain silent because you have to tell me what it is that you did in order to plead guilty. You want to give those rights up?
>
> [DEFENDANT:] Yes.
>
> [THE COURT:] All right. And are you doing so freely and voluntarily?

26

[DEFENDANT:] Yes.

[THE COURT:] No one's forcing you or threatening you, forcing you in any way to plead guilty?

[DEFENDANT:] No.

Defendant's claim of coercion is belied by the record. The judge accepted defendant's guilty plea, finding it comported with Rule 3:9-2. Although defendant may have been motivated to plead guilty by his need for surgery, there is no indication in the record that his decision to plead guilty was not a voluntary exercise of his free will. See Simon, 161 N.J. at 443.

Defendant also argues his attorney was ineffective for allowing him to plead guilty without providing an adequate factual basis. Defendant asserts he "did no more than simply answer the questions that were posed to him by his attorney" in providing a factual basis for the offenses, and "never said anything in his own words about what he did that made him guilty of the crimes charged against him."

In accordance with Rule 3:9-2, "it is essential to elicit from the defendant a comprehensive factual basis, addressing each element of a given offense in substantial detail." State v. Urbina, 221 N.J. 509, 526 (2015) (quoting State v. Campfield, 213 N.J. 218, 236 (2013)). "The 'court must be satisfied from the lips of the defendant,' that he committed every element of the crime charged."

27

Ibid. (citations omitted) (quoting State v. Smullen, 118 N.J. 408, 415 (1990)) (internal quotation marks omitted).  This factual foundation requirement serves two purposes.  "First, the factual basis enables a judge to 'ascertain the plea's voluntariness.'"  Ibid. (quoting State v. McCarthy, 394 U.S. 459, 466 (1969)).  "Second, the requirement of a factual basis helps 'to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'"  Id. at 526-27 (quoting State v. Barboza, 115 N.J. 415, 421 (1989)).

In Smullen, the defendant "furnished the factual basis for the plea as a result of leading questions," and the Court was "satisfied that taken in the context of the entire plea colloquy . . . there was an adequate factual basis for the plea."  118 N.J. at 415.  In State v. Fisher, 132 N.J. Super. 313, 315 (App. Div. 1975), because the factual basis merely involved "asking [the] defendant if he read the formal language of the charge and understood that language," we determined the factual basis was "not sufficient."

The factual basis in Fisher was limited to the following exchange:

> THE COURT: You are charged with receiving stolen property.  You are charged with carrying weapons without a permit or an ID card.
>
> Do you understand the nature of those offenses?

THE DEFENDANT . . . : Yes, sir.

[Id. at 315.]

We concluded, however, that the defendant's "guilt [was] too manifestly apparent upon the record to be ignored," and the error did not rise to the level of "manifest injustice." Id. at 316.

Here, defendant pled guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1) and :58-4; second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1); and third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1), (b)(3).

N.J.S.A. 2C:39-5(b)(1) provides: "Any person who knowingly has in his possession any handgun, including any antique handgun, without first having obtained a permit to carry the same as provided in N.J.S.[A. ]2C:58-4, is guilty of a crime of the second degree." Defendant provided the following factual basis for this offense:

> [DEFENSE COUNSEL:] [Defendant], as we discussed, in order to plead guilty we have to tell the [j]udge what happened that makes us guilty. You understand that?
>
> [DEFENDANT:] Yes.
>
> [DEFENSE COUNSEL:] Okay. I'm going to go over the indictments with you and help you with this a little bit. Indictment Number 21-09-0882 tells us, or alleges,

that on January 30[] of 2021 you were in Woodbridge Township in Middlesex County. Were you in fact in Woodbridge that day?

[DEFENDANT:] Yes.

[DEFENSE COUNSEL:] You were driving, is that right?

[DEFENDANT:] Yes.

[DEFENSE COUNSEL:] And as a result of a motor vehicle stop, eventually the officers found that you were in possession of a handgun?

[DEFENDANT:] Yes.

[DEFENSE COUNSEL:] And that handgun was in the car, correct?

[DEFENDANT:] Yes.

[DEFENSE COUNSEL:] Okay. And you didn't have a license o[r] any lawful reason at the time to have that handgun, correct?

[DEFENDANT:] No.

N.J.S.A. 2C:39-7(b)(1), in relevant part, reads:

[A] person having been convicted of a crime, or an attempt or conspiracy to commit a crime, pursuant to the provisions of N.J.S.[A. ]2C:35-3 through N.J.S.[A. ]2C:35-6, inclusive[,] . . . who purchases, owns, possesses or controls a firearm is guilty of a crime of the second degree and upon conviction thereof, the person shall be sentenced to a term of imprisonment by the court.

30

Defendant's factual basis for the certain persons charge was as follows:

> [DEFENSE COUNSEL:] Okay. And with that being so, [defendant], the Indictment [Number] 21-09-884 alleges that on January 30, 2021, that in having that handgun, you violated the certain persons statute. And we already know about the handgun, but you agree with me that you had been convicted of certain persons in the past, including possession with intent to distribute. Is that correct?
>
> [DEFENDANT:] Yes.
>
> [DEFENSE COUNSEL:] Okay. And we discussed this this morning, I had advised you that the [S]tate had the convictions, your record showed them, and that would make you a certain person so that the possession of that hand gun makes you a certain person. It's a technical charge. You understand that?
>
> [DEFENDANT:] Yes.

N.J.S.A. 2C:35-5(a)(1) and :35-5(b)(3) provide:

> (a) Except as authorized by . . . [N.J.S.A. ]24:21-1 [to -56], it shall be unlawful for any person knowingly or purposely:
>
>> (1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog;
>>
>> . . .
>
> (b) Any person who violates subsection a. with respect to:

. . .

> (3) A substance referred to in paragraph (1) of this subsection[4] in a quantity less than one-half ounce including any adulterants or dilutants is guilty of a crime of the third degree except that, notwithstanding the provisions of subsection b. of N.J.S.[A. ]2C:43-3, a fine of up to $75,000 may be imposed.

Defendant's factual basis for the possession of cocaine with intent to distribute charge was as follows:

> [DEFENSE COUNSEL:] Okay, I'm going to bring your attention to a different date. It would have been between -- and this is Indictment Number 21-10-0961. In Count [sixty-six], the allegations are that between January 25[] and March 15[] of 2021 that you were in Middlesex County. . . . Were you in Plainfield in Union County at that time?

---

4 The paragraph states:

> Heroin, or its analog, or coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, or analogs, except that the substances shall not include decocainized coca leaves or extractions which do not contain cocaine or ecogine, or 3,4-methylenedioxymethamphetamine or 3,4-methylenedioxyamphetamine, in a quantity of five ounces or more including any adulterants or dilutants is guilty of a crime of the first degree.
>
> [N.J.S.A. 2C:35-5(b)(1).]

[DEFENDANT:]  Yes.

[DEFENSE COUNSEL:]  Okay.  And at that time, there were times during that period where you had in your possession CDS.  The allegations here are cocaine, that . . . you had it in your possession.  Is that correct?

[DEFENDANT:]  Yes.

[DEFENSE COUNSEL:]  All right.  And you knew that it was cocaine?

[DEFENDANT:]  Yes.

[DEFENSE COUNSEL:]  All right.  And you didn't have a physician's or any medical reason or license to be able to possess it, is that true?

[DEFENDANT:]  No.

[DEFENSE COUNSEL:]  All right.  And your intent with that was to use it and share it with others, is that correct?

[DEFENDANT:]  Yes.

Defendant's responses provided a sufficient factual basis to establish the elements of each offense.  Contrary to defendant's assertion, leading questions are permissible in establishing a factual basis, see Smullen, 118 N.J. at 415, and the record shows that defendant's acts aligned with the elements of each offense. Thus, defendant failed to establish a prima facie claim of IAC on this issue as well.

33

Equally unavailing is defendant's claim that his attorney did not provide him with adequate discovery for Indictment No. 21-10-0961 concerning the involvement of the CI. During the plea colloquy, defendant admitted his attorney went "over all of the discovery" with him and answered all his questions. Defendant does not cite the discovery he was not provided, nor does he explain how receipt of that discovery would have caused him to plead not guilty and proceed to trial. See Marshall, 148 N.J. at 270 ("PCR 'is not a device for investigating possible claims, but a means for vindicating actual claims.'" (quoting People v. Gonzalez, 51 Cal. 3d 1179, 1206 (Cal. 1990))). As such, defendant's claim amounts to a "bald assertion[]," which "is insufficient to support a prima facie case of ineffectiveness." Cummings, 321 N.J. Super. at 170-71.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2755-24